UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO.: 1:10CV-__36-M____

| | |
|---|---|
| MAMMOTH RESOURCE PARTNERS, INC., ) <br> a Kentucky Corporation, in its capacity as ) <br> Manager for a Joint Venture known as the ) <br> Pioneer Prospect ) <br>         Plaintiff  ) <br> ) <br> vs.                 ) <br> ) <br> PHOENIX DRILLING, INC.,      ) <br> A West Virginia Corporation and    ) <br> BRADLEY T. LIGGET        ) <br>         Defendants ) | COMPLAINT <br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

  COMES NOW, the Plaintiff, Mammoth Resource Partners, Inc., in its capacity as the Manager for a Joint Venture known as the Pioneer Prospect, by and through counsel, and for its causes of action against the Defendants Phoenix Drilling, Inc. and Bradley T. Liggett state as follows:

**INTRODUCTION**

  1. This action is brought to recover certain monies and damages due to the Plaintiff, Mammoth Resource Partners, Inc. to compensate it for the causes of action raised herein through the misappropriation, breach of contract, breach of fiduciary duties by an escrow agent, and misconduct on behalf of the Defendant Phoenix Drilling, Inc. and/or its President Bradley T. Liggett and/or certain unnamed officers, directors, or employees of the Defendant Phoenix Drilling, Inc.

1

## PARTIES

2. The Plaintiff, Mammoth Resource Partners, Inc., is a Kentucky corporation with a principal business address of 27815 Louisville Road, Cave City, KY 42127. For purposes of this Complaint, it has at all times been the manager of a Joint Venture known as the Pioneer Prospect, which consists of certain South Dakota investors who formed said Joint Venture to drill gas wells in Eastern, Kentucky on leases that the Plaintiff had an interest in.

3. The Defendant Phoenix Drilling, Inc. is a domestic corporation licensed to do business in the State of West Virginia. Its principal office address is Route 2, Box 382A, Buckhannon, West Virginia 26201. Its mailing address is P.O. Box 2289, Buckhannon, West Virginia 26201. It is amenable to service of process by serving the company's agent for service of process, namely Bradley T. Ligget at Route 2, Box 382A, Buckhannon, West Virginia 26201.

4. At all times relevant to this proceeding, Bradley T. Liggett was identified to the Plaintiff as the President of Phoenix Drilling, Inc. and was the one who made all relevant decisions as it pertained to the handling of and/or failure to return the escrow proceeds of the Plaintiff once deposited with the Defendant Phoenix Drilling, Inc.

## JURISDICTION AND VENUE

5. Jurisdiction over this Complaint is conferred on this Court pursuant to 28 U.S.C. Section 1332 (a) because there is a complete diversity of citizenship between the Plaintiffs and the Defendants and the matter in controversy exceeds $75,000.00 exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. Section 1391.

## STATEMENT OF FACTS

7. Mammoth Resource Partners, Inc., hereinafter referred to as Mammoth, is a company which participates in drilling and operation of oil and natural gas drilling programs throughout Kentucky, either through the formation of limited liability companies, limited liability partnerships, or joint venture agreements, with associated accredited investors.

8. During the calendar year 2008 Mammoth raised certain investment capital from various accredited investors in which to drill a series of gas wells on leasehold interest that Mammoth had access to either in Clay or Leslie County, Kentucky, which for further references is referred to as the Leslie County Drilling Program. In order to facilitate said drilling program, the Pioneer Prospect Joint Venture was formed.

9. In order to implement the Leslie County Drilling Program it was necessary for Mammoth to subcontract the services of a drilling company to drill and/or complete the number of gas wells that were contemplated to be drilled on behalf of the Leslie County Drilling Program. In that regard Phoenix Drilling Company, Inc., hereinafter referred to as Phoenix, had previously held itself out as a competent drilling company and in fact Mammoth had utilized the services of Phoenix on a subcontract basis for the drilling of gas wells and other drilling programs that Mammoth had sponsored in Eastern Kentucky on or before the relevant dates in 2008 and 2009 that will be set forth hereinbelow.

10. During the initial negotiations between representatives of Mammoth and representatives of Phoenix over a subcontract drilling agreement in which Phoenix would drill and complete the wells for the Leslie County Drilling Program on behalf of Mammoth, a representative of Phoenix, who was later identified as Mike Howard, the

3

operation manager for Phoenix, suggested to representatives of Mammoth that Mammoth could take advantage of the then current tax laws by "prepaying" certain drilling funds prior to the end of 2008 which Phoenix would hold in a separate escrow account on behalf of Mammoth, and which would only be utilized for the future drilling of the wells that would comprise the Leslie County Drilling Program if Mammoth and Phoenix successfully negotiated a subcontract drilling agreement, or otherwise such funds were to be returned to Mammoth in their entirety.

11.     Based on such assurances that the funds, if remitted as "prepaid drilling funds" would be held in escrow, Mammoth caused to be issued a check dated December 31, 2008 in the amount of $675,000.00 to Phoenix Drilling to be held in escrow for the Leslie County Drilling Program. The funds were acknowledged as being received by Phoenix as "prepayment of $675,000.00 from Mammoth for the Leslie County Drilling Program" on January 5, 2009 by Defendant Bradley Liggett, who identified himself as President of Phoenix Drilling, Inc.

12.     Phoenix deposited the $675,000.00 received from Mammoth as part of an overall deposit on January 5, 2009 in its Chase commercial checking account in Buckhannon, West Virginia.

13.     During the ensuing months Mammoth and Phoenix were unsuccessful in negotiating a subcontract drilling agreement between their entities for the drilling of the wells for the Leslie County drilling program. Thereafter, on September 1, 2009, and again on September 17, 2009, a written demand was made from a representative of Mammoth to a representative of Phoenix requesting that the entire $675,000.00 in prepaid drilling funds from the escrow account that was to have been established by Phoenix on Mammoth's

4

behalf for the Leslie County Drilling Program be returned in its entirety. Rather than comply with same, Phoenix had its attorney, Daniel C. Cooper, remit by letter of September 18, 2009 a check representing $376,997.77 and further acknowledged that Phoenix had withheld $298,002.23 as an "off set" for a claim that Phoenix asserted was owed for another drilling project by Mammoth.

14. Phoenix had undertaken no authorized work on behalf of Mammoth on the Leslie County Drilling Program and the withholding of $298,002.23 from the prepaid drilling funds were not authorized by any representative of Mammoth and, in effect, constituted payment for "other work" which was outside the scope and boundary of the escrow arrangement between Mammoth and Phoenix for the Leslie County Drilling Program and was likewise an unauthorized use of the prepaid drilling funds on the Leslie County Drilling Program.

15. Efforts have been made on behalf of Mammoth to request Phoenix or Bradley Liggett to refund the balance of the prepaid drilling funds that were withheld by Phoenix, namely $298,002.23, but both Phoenix and Bradley Liggett have refused to remit the remainder of the prepaid drilling funds on the Leslie County Drilling Program to Mammoth.

**COUNT ONE**

BREACH OF CONTRACT

16. The Plaintiff repeats and realleges by reference each and every allegation contained in Paragraphs 1 through 15 and incorporate same herein as though fully set forth.

17. The remittance by Mammoth of $675,00.00 in prepaid drilling funds on December 21, 2008 to Phoenix, and the acceptance by Phoenix of same on January 5, 2009

and the deposit of such funds into an escrow account for the utilization of the Leslie County Drilling Program does constitute an actual escrow contract between Mammoth and Phoenix. Under such a contract, Phoenix was to continue to hold $675,000.00 of prepaid drilling funds in escrow until such time as Mammoth and Phoenix further negotiated a subcontract drilling agreement for the drilling of such Leslie County wells.

18. As part of the terms of the escrow contract Phoenix Drilling agreed not to release any of the escrow funds for any other purpose other than for the drilling of the Leslie County Drilling Program wells. As a further condition of the escrow contract Phoenix agreed to return the prepaid drilling funds in their entirety if Mammoth and Phoenix could not reach a subcontract drilling agreement for the drilling of such wells.

19. Mammoth has fulfilled its obligation under the escrow contract by remitting the $675,000.00 in prepaid drilling funds to be held in escrow by Phoenix, and then at a subsequent date, submitting written notification requesting the return of such funds when a subcontract drilling agreement could not reached between Mammoth and Phoenix for the commencement of drilling of the Leslie County Drilling Program wells.

20. Phoenix, however, has breached the terms of the escrow contract and its express or implied contractual commitments by failing to return in its entirety the $675,000.00 of escrow funds it had received from Mammoth for the Leslie County Drilling Program and has otherwise breached its express or implied contractual commitments under such escrow contract that was owed to the Plaintiff by its failure to return the full amount of the escrow proceeds received in the form of prepaid drilling funds, since none of the funds have been authorized for use by Phoenix on behalf of Mammoth on the Leslie County Drilling Program.

21. At all times hereto, once the parties did enter into the escrow contract, that it was known and understood and within the reasonable contemplation of the parties that in the event of a breach of the escrow contract by the Defendant Phoenix that the Plaintiff would suffer present and future losses as a foreseeable and probable result thereof. The Plaintiff at all times has relied upon the promises of the Defendant Phoenix, the Defendant Bradley Liggett, or the officers, directors, employees or agents of Phoenix that Phoenix would return the full amount of the escrow proceeds in the event that an agreement between Mammoth and Phoenix for the drilling of such Leslie County Drilling Program wells were not breached. The Plaintiff has relied upon the Defendants' promises which they have breached, all to the detriment of Mammoth.

22. As a direct and proximate result of the failure of Phoenix to return the full amount of the prepaid drilling funds under the escrow contract, such escrow contract has been breached by Phoenix, and as a result thereof the Plaintiff has suffered general damages from the loss of the return of the full amount of such escrow proceeds in an amount which exceeds the minimum jurisdictional limits of this Court, which would include the payment of prejudgment interest on said amount of escrow funds not returned by the Defendants, and special damages for the inability of the Plaintiff to comply with its responsibilities to its joint venture partners in the Pioneer Prospect by being unable to drill the number of wells promised to said Joint Venture because of the failure to return the entire funds from the escrow by the Defendants. The Plaintiff had made the Defendants aware of the need for the return of the entire amount of escrow funds deposited with the Defendants in correspondence dated September 1, 2009 and September 17, 2009 respectively. The Defendants failed to return the entirety of said escrow funds to the

Plaintiff. Said special damages would include but in no way be limited to the loss of gas revenues that the Plaintiff would have generated had the entirety of the escrow funds been returned as requested on September 1, 2009 and additional wells could be drilled for the Joint Venture.

## COUNT TWO

### PROMISSORY ESTOPPEL

23. Mammoth incorporates as if realleged Paragraphs 1 through 22.

24. Phoenix, through its employees, agents, officers, directors or representatives, made statements to Mammoth that Mammoth could prepay drilling costs for its Leslie County Drilling Program with Phoenix and Phoenix would hold such funds in escrow while Mammoth and Phoenix negotiated a subcontract drilling agreement to drilling the gas wells associated with the Leslie County Drilling program, and if no such agreement was negotiated, or if Mammoth decided not to subcontract with Phoenix for the drilling labor of such program, the entirety of such prepaid drilling funds would be returned to Mammoth.

25. Mammoth relied upon such statement and materially changed its position by forwarding $675,000.00 in prepaid drilling funds from its Leslie County Drilling Program account to Phoenix to have Phoenix hold in escrow awaiting a subsequent agreement as to whether or not Mammoth would subcontract Phoenix to commence the drilling of such gas wells.

26. Phoenix accepted the $675,000.00 in prepaid drilling funds for the Leslie County Drilling Program based upon such promises that same would be held in escrow and the entire amount returned if Mammoth and Phoenix did not negotiate a subcontract

8

drilling agreement utilized in commencement of drilling for the gas wells associated with the Leslie County Drilling Program. When such an agreement was not reached a representative of Mammoth sent written notice to Phoenix requesting the entirety of the $675,00.00 in prepaid drilling funds to be released from the escrow account and returned to Mammoth.

27. Phoenix breached its promise to return said funds in its entirety and remitted only $376,997.77, and withheld $298,002.23 as an "off set", with the short fall constituting a violation of the doctrine of promissory estoppel.

## COUNT THREE

### BREACH OF FIDUCIARY DUTY AGAINST BRADLEY T, LIGGETT

28. The allegations in Paragraphs 1 – 27 referred to hereinabove are incorporated herein by reference.

29. As an owner, officer, and director of Phoenix, the Defendant Bradley T. Liggett, hereinafter referred to as Liggett, owed a fiduciary duty of loyalty and good faith to Mammoth. By receiving the $675,000.00 in prepaid drilling funds and acknowledging to Mammoth that such have been received to be used for the Leslie County Drilling Program, Liggett was placed in a position of trust which created a fiduciary relationship between Mammoth and Liggett. Moreover, Liggett was charged with handling the escrow proceeds belonging to the escrow arrangement between Mammoth and Phoenix.

30. Liggett has breached his fiduciary duties to Mammoth by usurping substantial funds from Mammoth, and dealing with Mammoth's money as if it were either his own, or in the alternative, funds belonging to Phoenix and/or failing to return the entirety of the prepaid drilling funds that were escrowed with Phoenix once it was brought

9

to his attention that $298,203.23 had not been returned to Mammoth from the escrow arrangement.

31. As a direct and proximate result, Mammoth has sustained damages for which it should be compensated by Liggett.

## COUNT FOUR

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES AGAINST PHOENIX AND BRADLEY T. LIGGETT

32. The allegation of the foregoing paragraphs 1 – 31 are hereby incorporated by reference.

33. As a domestic corporation that held itself out to be a reputable drilling company, and once its employees, agents, owners or directors had negotiated in good faith with Mammoth to establish an escrow account for Mammoth to place funds on deposit that possibly could be used for the Leslie County Drilling Program if Mammoth and Phoenix were to reach a subcontract drilling agreement for the purposes thereof, Phoenix owed a fiduciary duty of loyalty and good faith to Mammoth.

34. Liggett, as an owner and a director of Phoenix, once it was brought to his attention that $675,000.00 in prepaid drilling funds had been received from Mammoth and placed in escrow with Phoenix, likewise owed a fiduciary duty of loyalty and good faith to Mammoth to make sure that the funds were not expended except for the furtherance of any drilling agreement that Mammoth and Phoenix would enter into so as to drill any gas well on the Leslie County Drilling Program.

35. There was a breach of the fiduciary duties owed by Phoenix to Mammoth in that once Mammoth had made a written request for the return in their entirety of the $675,000.00 in prepaid drilling funds, Phoenix failed to return same but instead, authorized

or caused to be authorized the withholding of $298,002.23 from such escrow funds and applying such funds withheld to matters which were outside of the scope and relationship of the escrow agreement with Mammoth and without the prior written consent of Mammoth for such application.

36. Liggett knowingly aided and abetted in Phoenix's breach of fiduciary duties to Mammoth by requesting and/or consenting and/or acquiescing in the withholding of $298,002.23 of the total $675,000.00 prepaid drilling funds that were not returned to Mammoth, but were instead applied to matters outside the scope of the escrow arrangement with Mammoth and treated the money as if it were his, or allowed Phoenix to treat the money as if it was entitled to withhold same.

37. As a result Mammoth has sustained damages for which it should be compensated by Phoenix and/or Liggett.

## COUNT FIVE

### ACTUAL FRAUD

38. Mammoth incorporates Paragraphs 1 – 37 as if set forth fully herein.

39. Phoenix, its officers, employees, agents or directors, created a scheme in which it deceived Mammoth to prepaying $675,000.00 in potential drilling funds for the Leslie County Drilling Program, knowing full well that the parties had yet to reach or negotiate the requisite subcontract drilling agreement for which Mammoth would subcontract the drilling labor to Phoenix to drill the wells for the Leslie County Drilling Program, and as a result of such scheme, Phoenix did induce Mammoth to escrow said $675.000.00 with it on or about December 31, 2008.

40. Under such fraudulent scheme, Phoenix and Liggett, jointly and severally asserted false information to Mammoth of a material fact in that both Phoenix and Liggett had assured Mammoth that the $675,000.00 in prepaid drilling funds would be escrowed and segregated in a separate account and that the funds would be returned to Mammoth in their entirety if Mammoth requested the return of said funds before any drilling for the Leslie County Drilling Program had commenced.

41. Such statements were false in that Phoenix did not segregate the $675,000.00 in a separate escrow account, but rather deposited same with other deposits in its regular commercial checking account; and furthermore, Phoenix and Liggett knew, but failed to disclose to Mammoth, that their intention was not to utilize the $675,000.00 as prepaid drilling funds for the Leslie County Drilling Program, but to utilize same to potentially pay or offset invoices for work performed by Phoenix for Mammoth on other programs not associated with the nature of the escrow agreement for the Leslie County Drilling Program, which Phoenix and Liggett failed to disclose to Mammoth before Mammoth was induced to escrow the $675,000.00 prepaid drilling funds for the Leslie County Drilling Program.

42. Through the actions of Phoenix and Liggett, their intent to deceive Mammoth in such regard is clearly evident.

43. As a direct and proximate result of the fraud and intent to deceive Mammoth by Phoenix and Liggett, Mammoth has suffered substantial damages and losses;

## COUNT SIX

### COMMON LAW FRAUD

44. Mammoth incorporates Paragraphs 1 – 43 as if fully set forth hereinbelow.

45. Phoenix, its agents, employees, officers or directors, and Liggett engaged in a scheme to defraud Mammoth and it did so recklessly and/or with reckless disregard of the interest of Mammoth in retaining the drilling funds that it had raised from accredited inventors in the Leslie County Drilling Program by creating a scheme to "prepay $675,000.00" of such drilling funds in escrow with Phoenix so as to receive the tax benefits of utilization of such funds in the calendar year 2008.

46. So as to implement the scheme and as to establish its reckless disregard for the interest of Mammoth in retaining such drilling funds on behalf of its investors in the Leslie County Drilling Program, Phoenix and/or Liggett or both represented to Mammoth that the funds were in a separate segregated escrow account for use only for the Leslie County Drilling Program, knowing full well that Phoenix and/or Liggett or both intended on utilizing a portion of such funds for their own interested purposes and which had nothing to do with the Leslie County Drilling Program or were contrary to the consent of Mammoth.

47. When Mammoth requested the return of the entire $675,000.00 in prepaid drilling funds, Phoenix and/or Liggett, or both authorized the retention of $298,002.23 from such funds.

48. As a direct and proximate result of the reckless conduct by Phoenix and/or Liggett or both, or the reckless disregard by Phoenix and/or Liggett or both of Mammoth's interest in the entire $675,000.00 in prepaid drilling funds being return to Mammoth, and instead their withholding of $298,002.23, Mammoth has suffered substantial damages and losses.

## COUNT SEVEN

## CONVERSION

49. Mammoth incorporates Paragraphs 1 – 48 of this Complaint as if fully set forth herein.

50. Mammoth, in its capacity as manager of the Pioneer Prospect Joint Venture that sponsored the Leslie County Drilling Program mailed $675,000.00 in proceeds by check from its account to Phoenix to hold in escrow for possible use as prepaid drilling funds for the necessary gas wells to be drilled for such program if Phoenix was hired by Mammoth to provide the subcontract and drilling labor for such wells, and if not, to be returned in full to Mammoth.

51. While said funds were in escrow with Phoenix, Phoenix and/or Liggett and/or both of said Defendants, acting jointly or aiding and abetting each other, converted $298,002.23 of the $675,000.00 escrowed funds to their own use.

52. Phoenix and/or Liggett, each acting either jointly, severally or aiding and abetting each other, had no right of ownership to the $298,002.23 of the original $675,000.00 escrowed funds, as such funds belonged entirely to the Plaintiff, but rather, were wrongfully converted and distributed to Phoenix, Liggett or others at their direction.

53. By the conduct exhibited hereinabove, Phoenix and/or Liggett, either acting individually, jointly, or aiding and abetting each other, engaged in the conversion of the $298,002.23 of Mammoth's prepaid drilling funds and as such, misappropriated such funds for the benefit of themselves or others.

54. As a direct and proximate result of such conversion, Mammoth has been damaged and is entitled to recover $298.002.23 that was otherwise converted by Phoenix

and/or Liggett or both, as well as additional damages for prejudgment interest on the funds so converted, and the profits Mammoth would have made had the funds not been converted and additional wells drilled for the Joint Venture, and its attorney's fees and costs associated in the attempts by Mammoth to recover the converted funds from the Defendants.

## COUNT EIGHT

### MAIL FRAUD AND WIRE FRAUD

55. Mammoth incorporates 1 – 54 of the complaint as if fully set forth herein.

56. At all relevant times hereto Phoenix and Liggett constituted an enterprise as defined in 18 U.S.C. Section 1961 (4), that engaged in an enterprise which affected interstate commerce. Phoenix and Liggett in fact constituted an association-in-fact enterprise between 2008 and 2009 and as such their actions taken together constituted a "conspiracy" as defined in 18 U.S.C.Section 1962.

57. There were in force and effect at all relevant times hereto criminal statutes in the United States involving mail and wire fraud and in particular 18 U.S.C. Section 1341 and 18 U.S.C. Section 1343 which among other things made it unlawful for any person or entity to devise any scheme or artifice to defraud for obtaining money or property by means of false or fraudulent pretenses, representations or promises, and transmitting such means by wire or interstate or foreign commerce.

58. Phoenix and Liggett devised and implemented a scheme to defraud Mammoth and obtain money or property from Mammoth by false and fraudulent representations through a "prepayment" of drilling expenses to be held in escrow scheme which caused the Plaintiff to in fact remit the $675,000.00 to Phoenix and Liggett under

15

such scheme. Phoenix and Liggett were to return the escrow proceeds if the contractual arrangement was not reached with Mammoth and Phoenix in which to allow Phoenix to provide drilling labor for certain wells on the Leslie County Drilling Program.

59. In furtherance of the execution of this scheme to defraud Mammoth, Phoenix and Liggett on numerous occasions used the United States Postal Service for interstate wires or telephone lines in violations of Federal Mail and wire fraud statutes, and in particular 18 U.S.C. Section 1341 and 18 U.S.C. Section 1343.

60. Phoenix and Liggett entered into a conspiracy to violate the provisions of 18 U.S.C. Section 1962, Section 1341 and Section 1343, and as direct and proximate result thereof, Mammoth has suffered substantial damages and losses.

61. In addition thereto and pursuant to 18 U.S.C. Section 1964 Mammoth is entitled to treble damages.

## COUNT NINE

### PUNITIVE DAMAGES

62. Mammoth incorporates all previous paragraphs of this complaint as if fully set forth herein.

63. The actions of Phoenix and Liggett, either jointly or severally, were committed with a conscious and reckless disregard of Mammoth's rights to return in full of the $675,000.00 in prepaid drilling costs that were escrowed with Phoenix and as a result of the willful and wanton and malicious intent to injure Mammoth by retaining $298.002.23 of such funds by Phoenix and/or Liggett as their own, Mammoth, in addition to compensatory damages, is entitled to an award of punitive damages under KRS

411.184(2) in an amount sufficient to punish both Phoenix and Liggett and to deter others from similar conduct.

## COUNT TEN

LIQUIDATED DAMAGES AND INTEREST

64. Mammoth incorporates all previous paragraphs of this complaint as if fully set forth herein.

65. The damages suffered by Mammoth constitute liquidated damages and as such Mammoth seeks interest on all sums as allowable by law.

WHEREFORE, the Plaintiff, Mammoth Resource Partners, Inc. does hereby pray for the following relief against the Defendants Phoenix Drilling, Inc. and Bradley T. Liggett, jointly and severally, as follows:

1. A trial by jury on all issues so triable.

2. With regard to all claims of breach of contract, promissory estoppel, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, actual fraud, common law fraud, and conversion, Mammoth prays for both compensatory damages and special damages in an amount to be proven at trial, pre-judgment interest, punitive damages, costs, and such other relief as may appear just and proper.

3. With regard to all claims arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Section 1964, Mammoth prays for compensatory damages in an amount to be proven at trial, and that said amount of damages be trebled, pre-judgment interest, attorney's fees, and costs and such other relief as is just and proper under 18 U.S.C. Section 1964.

This the 26th day of February, 2010.

s/Kenneth A. Meredith, II
Attorney for Mammoth Resource Partners, Inc.
316 East Main Street
P.O. Box 194
Bowling Green, KY 42102-0194
(270)781-6194